Matter of Pitkowsky (2025 NY Slip Op 01372)

Matter of Pitkowsky

2025 NY Slip Op 01372

Decided on March 12, 2025

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 12, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.

2022-09191

[*1]In the Matter of Herbert G. Pitkowsky, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Herbert G. Pitkowsky, respondent. (Attorney Registration No. 1971340)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the First Judicial Department on February 4, 1985.

Catherine A. Sheridan, Hauppauge, NY (Elizabeth A. Grabowski of counsel), for petitioner.
Mitchell T. Borkowsky, Melville, NY, for respondent.

PER CURIAM

OPINION & ORDER
The Grievance Committee for the Tenth Judicial District commenced a formal disciplinary proceeding against the respondent by serving and filing a notice of petition and verified petition, both dated November 15, 2022. The respondent, through counsel, served and filed a verified answer dated December 12, 2022, largely admitting to the factual specifications contained in the verified petition and denying the conclusions of law therein. By decision and order on application dated April 25, 2023, this Court referred the matter to the Honorable Sandra L. Sgroi, as Special Referee, to hear and report. Two prehearing conferences were conducted on May 26, 2023, and June 16, 2023. The disciplinary hearing was held on July 17, 2023. In a report, the Special Referee sustained all charges in the verified petition.
The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as this Court deems just and proper. The respondent does not dispute the findings of the Special Referee and requests that this Court impose discipline in the form of a public censure.
The Petition 
The verified petition contains seven charges alleging that the respondent violated the Rules of Professional Conduct by misappropriating funds entrusted to him as a fiduciary and failing to keep adequate escrow account records. At all relevant times, the respondent maintained an attorney trust account at Citibank, with an account number ending in 0053, entitled "Herbert G. Pitkowsky, Esq., Attorney Escrow Account IOLA" (hereinafter the escrow account). The respondent was the sole signatory on the escrow account. Charges one through four allege that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0).
As to charge one, in or around April 2018, the respondent was retained to administer the Estate of Roger LaFontant (hereinafter the LaFontant Estate). In or about 2018 and 2019, the respondent represented the LaFontant Estate in the sale of real property. On December 1, 2018, the balance of the escrow account was $584.45. On December 6, 2018, the respondent deposited into [*2]the escrow account a down-payment check in the amount of $7,560 for the LaFontant Estate real estate matter. The real estate matter closed on February 6, 2019. Between December 6, 2018, and February 6, 2019, the respondent was required to maintain $7,560 in the escrow account in connection with this real estate matter. Between December 10, 2018, and December 31, 2018, five checks totaling $7,750, made payable to the respondent, were paid against the escrow account. Between December 1, 2018, and January 31, 2019, the balance in the escrow account fell below $7,560, such that on December 31, 2018, and January 31, 2019, the escrow account balance was $88.70.
As to charge two, on March 20, 2019, after the closing of the LaFontant Estate real estate matter, the respondent was required to have $181,998.23 on deposit in the escrow account for the LaFontant Estate. However, on that date the balance in the escrow account was $172,026.93 ($9,971.30 below what the respondent was required to maintain).
As to charge three, in or about 2019, the respondent represented client Rogow in the sale of real property (hereinafter the Rogow matter). On March 22, 2019, the respondent deposited into the escrow account a down-payment check in the amount of $45,000 for the Rogow matter, which closed on June 14, 2019. Between March 22, 2019, and June 13, 2019, the respondent was required to maintain $45,000 on deposit in the escrow account for the Rogow matter. Between March 22, 2019, and April 30, 2019, the respondent was required to maintain $181,998.23 of funds related to the LaFontant Estate. On April 30, 2019, the respondent was required to have the total sum of $226,998.23 on deposit in the escrow account for both matters. On April 30, 2019, the balance in the escrow account was $214,526.93 ($12,471.30 below what the respondent was required to maintain). Between March 14, 2019, and April 30, 2019, three checks totaling $5,000, which were made payable to the respondent, were paid against the escrow account.
As to charge four, in or about 2019, the respondent represented client Zappi in the sale of real property (hereinafter the Zappi matter). On June 13, 2019, the respondent deposited into the escrow account a down-payment check in the amount of $150,000, made payable to the respondent "as attorney." The Zappi matter closed on August 22, 2019. Between June 18, 2019, and August 22, 2019, the respondent was required to have on deposit in the escrow account combined funds of at least $220,898.23 in connection with the Zappi matter and the LaFontant Estate. Between June 18, 2019, and August 22, 2019, the balance in the escrow account fell below the amount that the respondent was required to maintain to as low as $197,132.99 on August 16, 2019. Between July 2, 2019, and December 11, 2019, 13 checks totaling $27,600, which were made payable to the respondent, were paid against the escrow account,
Charge five alleges that the respondent failed to make accurate entries of all financial transactions in the escrow account in a ledger book or similar record, in violation of rule 1.15(d)(2) of the Rules of Professional Conduct. Based on the factual specifications of charges one through four, between December 2018 and December 2019, the respondent failed to make accurate entries of all financial transactions in the escrow account and to maintain a record of receipts and disbursements in a ledger book or similar record.
Charge six alleges that based on the factual specifications of charges one through five, between December 2018 and December 2019, the respondent engaged in conduct adversely reflecting on his fitness as a lawyer by failing to reconcile the escrow account, in violation of rule 8.4(h) of the Rules of Professional Conduct.
Charge seven alleges that based on the factual specifications of charges one through six the respondent engaged in conduct adversely reflecting on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.
By verified answer dated December 12, 2022, the respondent largely admits to the factual allegations of all of the charges, but denied the allegations of law therein.
The Hearing 
By way of background, the respondent had been practicing law for approximately 38 years, primarily in the areas of transactional real estate, estate administration, estate planning, and advanced directive documents. He is a sole practitioner and has no staff to aid him. Occasionally, the respondent's wife assisted him with clerical matters. The respondent has been married for approximately 32 years and has two adopted sons.
The respondent testified that in April 2018, he was retained by Jorge LaFontant to have Jorge appointed as the executor of the LaFontant Estate to handle the collection of various assets of the estate, including real property owned by the decedent, and to make the proper distributions to the heirs. The respondent had an hourly fee arrangement, with an initial deposit towards the court filing fee. Between December 10, 2018, and December 31, 2018, the respondent drew five check totaling $7,750 from the escrow account payable to himself. The respondent [*3]testified that those funds were drawn against the funds for the LaFontant Estate as fees for ongoing matters related to the LaFontant Estate.
The respondent issued two more checks from the escrow account: (1) check 2546 for $1,500, issued on June 30, 2019; and (2) check 2547 for $1,000, issued on July 6, 2019. The checks were supposed to be the respondent's fees for the Zappi matter. However, the respondent later discovered that he deposited the Zappi retainer into his personal account not the escrow account, and when the respondent issued checks 2546 and 2547 from his escrow account, there were no correlating fund on deposit for the Zappi matter. The respondent testified that at the time, he "wasn't focused and realized that that had occurred."
On December 13, 2019, a check in the amount of $35,000, drawn against the escrow account, was dishonored. The respondent testified that there were four heirs for the LaFontant Estate. After the closing of the real property transaction in June 2019, the respondent disbursed four checks, for $35,000 each, to each of the heirs. The respondent stated that after the closing, he was still disbursing funds and working on matters related to the LaFontant Estate, and that one heir, Herita LaFontant, did not negotiate her check until approximately six months later, in December of 2019. Upon receiving notice of the dishonored check, on December 16, 2019, the respondent immediately deposited $4,000 of his personal funds into the escrow account to cover the deficit. After the respondent cured the deficit, Herita LaFontant negotiated the dishonored check on December 24, 2019. Thereafter, the respondent reconciled the escrow account and the funds for the LaFontant Estate and returned the excess fees he had distributed to himself. The respondent's final bill for the LaFontant Estate matter reflected that he performed 10½ hours of work, plus disbursements and expenses, for a total of $3,455.50.
In mitigation, the respondent testified that he never intended to misappropriate client funds, that he replenished the funds that he misappropriated, that no client lost any money, and that no client was hurt by his conduct. The respondent expressed remorse for his errors and averred that it was the result of his lack of focus and poor bookkeeping practices during a difficult personal time. The respondent testified that one of his sons had severe mental health issues, and was diagnosed with depression, attention deficit disorder, attention deficit hyperactivity disorder, is on the autism spectrum, and has oppositional defiance disorder. His son's conditions worsened in September 2018, when he suffered a fall and sustained a severe fracture of his skull. He was admitted to the intensive care unit, was nonverbal for a period of time, and suffered a traumatic brain injury. After the injury, his son was unable to return to school. His son returned home from the hospital in or about the end of October 2018 or the beginning of November 2018. The respondent became his son's primary caregiver and handled all daily matters for his son, including inter alia, his meals and arranging tutors for home schooling. The respondent testified that his son became his primary focus, and he did not realize the amount of the checks that he was drawing against funds for the the LaFontant Estate was growing as he was not keeping an ongoing accounting. During this time the respondent suffered from his own medical problems, including asthma, chronic obstructive pulmonary disease, and sleep apnea. In April 2019, the respondent suffered an atrial fibrillation and was hospitalized. Upon his release from the hospital he was put on several rounds of medication that required adjustment. The respondent suffered a second atrial fibrillation in January 2021.
The Special Referee's Report 
Based upon the respondent's admissions and the evidence presented, the Special Referee found that the Grievance Committee established a violation of each charge in the petition, and sustained all charges. As to mitigation, the Special Referee found that the respondent's misconduct occurred during a period of time that the respondent was facing severe personal and family health issues; the conduct did not appear to be venal; and the respondent cooperated with the Grievance Committee, accepted full responsibility for his actions, and expressed genuine remorse. The Special Referee further noted the substantial character evidence submitted by the respondent.
The Grievance Committee moves to confirm the report of the Special Referee. The respondent does not dispute the findings of the Special Referee, but respectfully submits that under the totality of the circumstances, a public censure is the appropriate discipline. The respondent submits that the circumstances leading to the proceeding occurred during a time when the respondent's physical and emotional well-being were compromised—that being the extraordinary family and personal health concerns. The respondent averred that at all times, he believed he was withdrawing fees for work he performed for the LaFontant Estate and admitted that his "acute lack of focus" resulted in his over-disbursement of client funds to himself.
Findings and Conclusion 
In view of the respondent's admissions and the evidence adduced at the hearing, we [*4]find that the Special Referee properly sustained the seven charges. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted, and the charges are sustained.
In determining an appropriate measure of discipline, this Court considered that the misconduct occurred in the midst of the respondent dealing with his son's traumatic brain injury and fractured skull. The respondent also submitted mitigating evidence of his personal medical problems, the remedial measures that he implemented concerning his escrow account, and positive character evidence, including his contributions to his local community. In aggravation, the respondent was previously issued a Letter of Caution in 2016 and an Admonition in 2022.
Given the extraordinary circumstances of this case, we conclude that the appropriate sanction is a public censure.
LASALLE, P.J., DILLON, DUFFY, BARROS and CONNOLLY, JJ., concur
ORDERED that the Grievance Committee's motion to confirm the report of the Special Referee is granted; and it is further,
ORDERED that the respondent, Herbert G. Pitkowsky, is publicly censured for his professional misconduct.
ENTER:
Darrell M. Joseph
Clerk of the Court